## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DESIREE BERGERON, LILLIAN | ) | CIVIL ACTION NO. 17-CV-00519 |
| FOGARTY, PATRICIA GREMILLION, | ) | |
| NATALIE ILLG, MICHELE KRAFT, | ) | |
| KEVIN MILLET, ELIZABETH NELSON, | ) | |
| KEVIN BRANFORD, and, VALERIE | ) | |
| WALKER, individually and on behalf | ) | SECTION I JUDGE AFRICK |
| of others similarly situated | ) | |
| | ) | |
| Plaintiffs, | ) | DIVISION 2 JUDGE WILKINSON |
| | ) | |
| v. | ) | |
| | ) | |
| OCHSNER HEALTH SYSTEM and | ) | |
| OCHSNER CLINIC FOUNDATION | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendants, Ochsner Health System and Ochsner Clinic Foundation (collectively "Ochsner"), submit this Memorandum in Support of their Motion for Partial Dismissal.

## A.     INTRODUCTION

On May 30, 2017, Ochsner filed a Motion for Partial Dismissal of several claims advanced by Plaintiffs in their First Amended Complaint.  (Dkt. # 29). In response to Ochsner's Motion to Dismiss, Plaintiffs moved for leave to file a Second Amended Complaint, which the Court granted. (Dkt. ## 31, 34). The Plaintiffs' Second Amended Complaint added factual allegations and claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), and deleted the Louisiana Unfair Trade Practices ("LUTPA")[1] and fraud claims. (*Id.*). Ochsner

---

[1] In, Plaintiffs' "Relief Sought," Section VIII of the Complaint, Plaintiffs still seek damages for violation of the LUTPA, though all other references to the claim have been deleted. Defendants assume this is inadvertent.

then filed a Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint, restating many of its arguments from its first Motion to Dismiss and alleging that Plaintiffs' Second Amended Complaint failed to address all of the deficiencies identified by Ochsner in its first Motion to Dismiss. (Dkt. # 41).  In response, Plaintiffs' filed a Motion for Leave to File a Third Amended Complaint. (Dkt. # 43). In that Motion for Leave, Plaintiffs sought to "clarify the claims and damages in their Second Amended Complaint by further defining and limiting the collective action class of Plaintiffs and similarly situated current and former employees who were affected by Defendants' miscalculation of the overtime premium pay rate at issue in this Fair Labor Standards Act ("FLSA") lawsuit." (*Id.*). The Court granted Plaintiffs' Motion for Leave. The Third Amended Complaint was entered into the record on July 12, 2017. (Dkt. # 47).

While Plaintiffs' Third Amended Complaint does clarify their FLSA (overtime) claims, it fails to address all of the deficiencies identified by Ochsner in its most recent Motion to Dismiss, specifically related to Plaintiffs' ERISA claims and class claims under Rule 23 of the Federal Rules of Civil Procedure.

At its core, Plaintiffs' First Amended Complaint is a proposed collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Dkt. # 47). However, in addition to Plaintiffs' claims under the FLSA, Plaintiffs threw in the "kitchen sink," alleging state law claims for conversion/misappropriation, breach of contract, detrimental reliance, unjust enrichment and alleged violations of Louisiana's Wage Payment statute ("LWPA"), La. R.S. 23:631 and  ERISA. (*Id.*).

Regarding Plaintiffs' ERISA claims, Plaintiffs allege that because they were not paid proper overtime, Ochsner failed to meets its obligations under ERISA and did not contribute enough towards the benefit plan.  If Plaintiffs were allowed to recover under the FLSA for

overtime, and under ERISA for Ochsner's alleged failure to make the correct contributions to the benefit plan because of the unpaid overtime, this would provide Plaintiffs with double recovery. In addition, Plaintiffs' claims are not covered by ERISA, as Plaintiffs allege that the ERISA plan at issue only required that contributions be made from compensation paid to the plan participants, not the hours that should have been credited.

Plaintiffs' claims for breach of contract and violation of the LWPA overlap, as they request the same recovery.  Namely, Plaintiffs allege that Ochsner breached its contract with Plaintiffs when it did not pay agreed to stipends and bonuses and agreed upon wages (including payment for meal breaks). (*Id.*, ¶¶ 49-53).  Plaintiffs then ask the Court to reward them with the **same wages**, along with penalties and attorneys' fees, under La. R.S. 23:621, *et seq*, claiming that these alleged unpaid wages should have also been included on the last paychecks of employees who departed Ochsner. Allowing Plaintiffs to proceed under both theories would potentially provide the Plaintiffs' with double recovery for these alleged unpaid wages. Finally, certain Rule 23 class action allegations should be dismissed for the reasons outlined below.

**B.      BACKGROUND AND PLAINTIFFS' ALLEGATIONS**

Plaintiffs allege that Ochsner failed to properly calculate and compensate current and former hourly employees for their overtime wages as required by law. (Dkt. #47, ¶ 10). Plaintiffs claim that Ochsner failed to properly calculate their regular hourly rate by not including certain premium pay in the calculation of the regular rate. (Dkt. # 47, ¶11, 12). Plaintiffs also allege that Ochsner did not properly match its employees' 401k contributions, based on the allegations that Ochsner did not properly calculate its employees' overtime wages and other compensation. (Dkt. #47 ¶¶ 57-72). Plaintiffs allege that they and the members of their proposed collective action regularly work more than forty hours per week. (Dkt. # 47, ¶ 14).

Plaintiffs also allege that they were frequently asked to clock out during regularly scheduled shifts so as to avoid overtime payments. (Dkt. # 47, ¶ 15). Plaintiffs allege that after Ochsner informed them of the overtime issues, certain Plaintiffs in the liver transplant unit "were stripped of agreed upon stipends and/or suffered reduced pay contrary to employment agreements." (Dkt. # 47, ¶ 24). Plaintiffs allege that certain Plaintiffs "were guaranteed their agreed stipends and/or bonuses as part of the promises to become employed, or remain employed, at Ochsner." (Dkt. # 47, ¶ 26). Plaintiffs allege that the withholding of these stipends was an unlawful breach of contract by Ochsner. (Dkt. # 47, ¶ 27). Plaintiffs also allege that they detrimentally relied on Ochsner's promise to pay proper wages as well as their agreed upon stipends and/or bonuses. (Dkt. # 47, ¶ 28).

Plaintiffs allege that Ochsner has been the Plan Sponsor of the 401k Employee Benefit Plan. (Dkt. # 47, ¶ 32). Plaintiffs' allege that Ochsner failed to record and/or report all of the hours (including overtime) worked by the Plaintiffs, and therefore failed to comply with the ERISA requirement for employers to maintain records with respect to each of its employees sufficient to determine the benefit accrual rights under the plan. (Dkt. # 47, ¶ 33). Basically, Plaintiffs allege that because Ochsner did not pay them overtime correctly, and did not pay them the agreed upon wages, their 401k plans were shorted. (Dkt. # 47, ¶ 33). Therefore, Plaintiffs are requesting the same damages they request under the FLSA and under their breach of contract claim. (Dkt. # 47, ¶¶ 33-34). Plaintiffs also admit that they failed to exhaust their administrative remedies under ERISA, stating it would be futile for them to exhaust these administrative remedies under the Plan. (Dkt. # 47, ¶ 36). Plaintiffs further state that Ochsner has admitted that it did not properly record hours actually worked, but fails to cite where or when Ochsner did so. Ochsner denies ever doing so.

In outlining their counts, Plaintiffs make the following pertinent claims in their Third

Amended Complaint:

- Count Two: Conversion and Misappropriation. Plaintiffs allege that "Ochsner's actions in withholding monies from employee paychecks (excluding overtime), which said employees were owed, amounts to their conversion of funds under Louisiana law. See. La. Civ. Code. art. 2315." (Dkt. # 47, ¶ 48)

- Count Three: Breach of Contract, Detrimental Reliance, Quantum Meruit and Unjust Enrichment. Plaintiffs alleges that Ochsner has breached its contractual obligations to Plaintiffs by "failing to pay agreed upon wages over and above minimum wage for performing work for Ochsner (including agreed upon non-discretionary bonuses/stipends, shift differentials, on-call, call-back pay, and missed meal breaks, but excluding overtime)… (Dkt. # 47, ¶ 50). Plaintiffs continue that alternatively, they detrimentally relied on Ochsner's "promise to pay agreed upon wages over and above minimum wage (including agreed upon stipends and/or non-discretionary bonuses, shift differentials, on-call, call-back pay, and missed meal breaks and related benefits by continuing to perform such work for Ochsner's benefit, but excluding overtime). La. Civ. Code 1967." (Dkt. # 47, ¶ 51). Plaintiffs' also allege "[a]lternatively" that Ochsner was unjustly enriched. (Dkt. # 47, ¶ 52).

- Count Four: Failure to Pay Wages Under La. R.S. 23:631 *et seq.* Plaintiffs allege that upon termination of an employee's employment, Ochsner "failed to pay all agreed upon wages due (and associated benefits) to former employees due to their miscalculation of overtime premium as described above." (Dkt. # 47, ¶ 55) Plaintiff makes the same claims under a breach of contract theory and under ERISA. Plaintiffs later allege that "Ochsner was required to remit all of an employee's overdue wages over and above minimum wage (and associated benefits, excluding overtime)…" (Dkt. # 47).

- Counts Five and Six: Failure to Maintain Records Under ERISA and Failure to Credit Eligible Compensation Under ERISA: Plaintiffs allege that Ochsner has been the plan sponsor of the Retirement Plan within the meaning of ERISA. Plaintiffs further allege that by Ochsner's failure to

record and/or report all hours work by the Plaintiff, Ochsner has failed to maintain records with respect to each of its employees sufficient to determine the benefit accrual rights of the Retirement Plan participants. (Dkt. # 47, ¶ 64). Plaintiffs also allege that Ochsner has breached its fiduciary duty by failing to credit overtime compensation and other due wages to the Plaintiffs and by failing to fully match employer contributions. (Dkt. # 47, ¶ 70).

Plaintiffs also make Rule 23 class allegations related to their ERISA claims and their state law claims, including breach of contract, unjust enrichment, detrimental reliance, quantum meruit, conversion/misappropriation, money had and received, and for failure to pay wages under La. R.S. 23:631, *et seq.* (Dkt. # 47, ¶ 89). Plaintiffs allege that all of these putative class claims are associated with Ochsner's "non-payment of wages to former employees, non-payment of agreed upon stipends/bonuses for performing certain procedures, not properly keeping records of hours worked or properly crediting and matching certain 401(k) contributions under its Employee Benefits Agreement and hourly employees who worked through unpaid meal breaks at any point from three years prior to the filing of suit through entry of judgment." (Dkt. # 47, ¶ 89). Plaintiffs continue that "the non-payment of wages to former employees' class claims stem from Ochsner's failure to pay wages under La. R.S. 23:631, *et seq.*," (Dkt. # 47, ¶ 89). Plaintiffs also allege:

> The meal break class claims are causes of action for breach of contract, unjust enrichment, detrimental reliance, quantum meruit, money had and received, all associated with the Defendants' failure to pay the members of the class their contractual straight time rate for unpaid meal breaks worked, as well as Defendants' active discouragement of employee attempts to be paid for such meal breaks notwithstanding Defendants' awareness that the unpaid meal breaks were worked (in non-overtime weeks).

(Dkt. # 47, ¶ 89). Plaintiffs continue that the "class claims surrounding Ochsner's failure to match certain 401(k) contributions is brought under a breach of contract theory and of ERISA violations for Ochsner's failure to comply with the ERISA requirement to maintain records

sufficient to determine benefit accrual rights and failure to perform fiduciary duties to ensure Plaintiffs and Putative Class Members were properly credited for wages and overtime not recorded as eligible compensation under the Retirement Plan and corresponding employer contribution shares as required by the Plan..." (*Id.*)

Further expounding on their meal breaks and stipend class claims, Plaintiffs assert that Ochsner breached their contract with employees by "(a) failing and refusing to pay the Putative Class Members for their work performed during meal breaks in non-overtime weeks, despite Ochsner's actual and constructive knowledge that Putative Class Members were performing said work at Ochsner's direction and for their benefit; and (b) by failing to pay CRNA's their agreed upon liver stipends (but excluding overtime), in order to avoid overtime pay." (Dkt. # 47, ¶ 97).

Plaintiffs' Third Amended Complaint suffers from many of the same defaults as the First and Second Amended Complaints. For the reasons outlined below, many of Plaintiffs' claims in their Third Amended Complaint should be dismissed.

## C.     LAW AND ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a defense when a party has failed to state a claim upon which relief can be granted. Courts will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). Although courts are required, for the purpose of the analysis under Rule 12(b)(6), to treat as true all factual allegations in the complaint, they are not bound to accept labels, conclusions, or bald recitations of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007); *Spivey,* 197 F.3d at 774; *see also Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992), citing *Assoc. Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974) ("'[C]onclusory allegations

and unwarranted deductions of fact are not admitted as true' by a motion to dismiss.").

Moreover, "'in order to avoid dismissal for failure to state a claim, a plaintiff **must plead**

**specific <u>facts</u>**, **not mere conclusory allegations** . . .'" *Guidry,* 954 F.2d at 281, citing *Elliott v.*

*Foufas,* 867 F.2d 877, 881 (5th Cir. 1989) (emphasis added).

Rule 8 requires that pleadings include a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(1). The United States Supreme Court

has explained that the pleading standard of Rule 8 does not require "detailed factual allegations,"

but the allegations must be more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. at 1949 (2009) (citing *Twombly*,

550 U.S. at 555, 127 S.Ct. at 1955). A pleading that only "offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action'" is insufficient. *Iqbal*, 556 U.S. at 677,

120 S. Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65. "[T]he complaint

must contain either direct allegations on every material point necessary to sustain a recovery. . .

or contain allegations from which an inference fairly may be drawn that evidence on these

material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975

(5th Cir. 1995) (internal quotation and citation omitted). Similarly, "a complaint [does not]

suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S.

at 677, 120 S. Ct. at 1949, citing *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966.

To survive a Rule 12(b)(6) motion to dismiss, a pleading "must contain **sufficient <u>factual</u>**

**matter**, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S.

at 677, 129 S. Ct. at 1949 (emphasis added), citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

"The factual allegations must 'raise a right to relief above the speculative level. . . ." *Hamer v.*

*Jones*, 364 Fed. Appx. 119, 122 (5th Cir. 2010), citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at

1964-65. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677, 129 S. Ct. at 1949, citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Thus, "the statement must present more than 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Roque v. Jazz Casino Co. LLC*, 388 Fed. Appx. 402, 405 (5th Cir. 2010), citing *Iqbal*, 556 U.S. at 677, 129 S. Ct. at 1949. *Iqbal* makes clear that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949-50.

Iqbal* also instructs that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* 556 U.S. at 679, 129 S. Ct. at 1950. But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.,* citing Fed. Rule Civ. Proc. 8(a)(2). While "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it **does _not_** unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (emphasis added).

### 1. Plaintiffs' LWPA Claim Requesting Overtime Pay Should Be Dismissed

Plaintiffs' Third Amended Complaint clarifies most of their FLSA (overtime) claims. However, Plaintiffs still continue to attempt to collect overtime under the LWPA.  Specifically, Plaintiffs claims that "[u]pon Ochsner's termination of Direct Patient Care Employees, including Valerie Walker, Ochsner failed to pay all agreed upon wages due (and associated benefits) to former employees due to their **miscalculation of overtime premium** as described above." (Dkt.

#47, ¶  55). Plaintiffs later state that they are demanding only non-overtime wages under their LWPA claim, but as noted, there are inconsistencies in their allegations. (*Id.*) Therefore, out of an abundance of caution, Ochsner requests that the Court dismiss any state law claims made by Plaintiffs requesting overtime wages, as  Louisiana does not have a state statute which requires the payment of overtime wages. *Barrois v. Title*, 1996 WL 312063, *1 (E.D. La. June 10, 1996) ("An employee's right to overtime wages is governed exclusively by § 207 of the FLSA; there is no Louisiana state law requiring the payment of overtime wages.  Section 216 of the FLSA authorizes a person to file such a lawsuit to recover overtime pay.") Absent a contract, payment of overtime wages is governed exclusively by the FLSA, 28 U.S.C. § 207. *Woods v. Berean Children's Home, Inc.,* 2010 WL 1050120 (M.D.La. 2010), citing *Odom v. Respiratory Care, Inc.,* 1998-0263 (La.App. 1 Cir. 2/19/99), 754 So. 2d 252 (payment of overtime wages governed by FLSA). *Joffrion v. Excel Maintenance Services, Inc.*, 2011 WL 5190524, *2 (M.D. La. Sept. 20, 2011) (Noland, C.).  Plaintiffs do not allege any contract to pay overtime with Ochsner, and bases (at least part) the LWPA claim on the same allegation (unpaid overtime) that forms the basis of the FLSA claim. It should therefore be dismissed.

In *Woods v. Berean Children's Home*, 2010 WL 1050120, * 2 (M.D. La. Feb. 19, 2010) (Riedlinger, S.), Magistrate Judge Riedlinger of the Middle District of Louisiana stated:

> Louisiana does not have a statute which generally provides for the recovery of overtime wages absent a contract to pay overtime. The statutes which the plaintiffs cited in the pretrial order and in their motion, LSA-R.S. 23:631 and 632, clearly do not contain a provision for recovery of overtime wages absent a contractual agreement to pay the employee overtime. Absent a contract, payment of overtime wages is governed exclusively by the Fair Labor Standards Act, 28 U.S.C. § 207.

*See also Smith v. Diamond Offshore Management Company*, 2003 WL 23095586, *4 (E.D. La. Dec. 23, 2003) (Engelhardt, J.) (the Court dismissed plaintiff's claims under Louisiana state law

that defendant failed to pay plaintiff overtime wages); *Odom v. Respiratory Care, Inc.*, 98-0263 (La. App. 1 Cir. 2/19/99), 754 So. 2d 252 (the Court dismissed Plaintiff's claim for overtime wages under the LWPA statute because "[t]he payment of overtime wages is clearly governed by the FLSA.); *Sirmon v. Cron & Gracey Drilling Corp.*, 44 F. Supp. 29, 30-31 (W.D. La. 1942) (the court found the FLSA controlling over an employee's claim for overtime wages, rather than the Louisiana statute requiring an employee be paid his due wages within three days of termination).

Therefore, for these reasons, any state law claims advanced by Plaintiffs which relate in any way to Ochsner's alleged failure to pay overtime wages should be dismissed, including at least part of Plaintiffs' LWPA claim, as the FLSA is the sole remedy for alleged unpaid overtime in Louisiana. Further, to the extent Plaintiffs' ERISA claims seek compensation for overtime not credited, these claims should be dismissed.

### 2.    Plaintiffs' Wage Payment Claim Should Be Dismissed for Failure to Make A Demand

Plaintiffs' non-overtime claims under La. R.S. 23:631, *et seq.*, should be dismissed because each claimant making a claim under La. R.S. 631 and 632 must make a demand for payment **prior to litigation** in order to recover attorney's fees or penalty wages under La R.S. 23:632. *Becht v. Morgan Building & Spas, Inc.*, 843 So. 2d 1109, 1112 (La. 2003).[2] Plaintiffs attempt to accomplish this via their First, Second and Third Amended Complaint. (Dkt. # 4, 36, 47). This, however, is insufficient as Ochsner was given no notice of which former employee is

---

[2] The Louisiana Fourth Circuit Court of Appeal in *Mitchell v. Fein*, 281 So. 2d 463 (4th Cir. 1973) found that the filing of a lawsuit is not an adequate demand under La. R.S. 23:632. The Louisiana Supreme Court later found that when a suit for unpaid wages is filed and a denial of liability for those unpaid wages is later filed by the employer, the requirement of a demand prior to the lawsuit is waived, and the lawsuit is adequate. *Carriere v. Pee Wee's Equipment Co.*, 364 So. 2d 555 (La. 1978). In this situation, an answer has not been filed denying Plaintiffs' LWPA claims. Therefore, demand prior to the filing of a lawsuit is still required.

claiming which wages are past due, precluding Ochsner's ability to remedy the claim prior to litigation. Thus, the claims asserted pursuant to the LWPA should be dismissed in their entirety.

### 3.    Many of Plaintiffs' State Law Claims Cannot Be Advanced on a Class-Wide Basis

Plaintiffs attempt to advance Rule 23 class-wide claims on the following legal theories: breach of contract, quantum meruit/unjust enrichment, money had and received and for the non-payment of wages due and owing to unnamed former employees. Aside from alleging mere legal conclusions and parroting the provisions of Fed. R. Civ. P. 23, Plaintiffs do not plead sufficient facts to support the notion that their state law claims could be tried on a class-wide basis. To the contrary, the facts they plead demonstrate the individualized nature of their claims. The Fifth Circuit has repeatedly emphasized that a class cannot be certified when an attempted class-wide trial of the claims, defenses and damages in the case would "degenerat[e] into a series of individual trials."

Class allegations should be stricken "where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate." *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 U.S. Dist. LEXIS 87706, at *24 (E.D. La. Oct. 6, 2008); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007); *Harrell v. CheckAGAIN, LLC*, 248 F.R.D. 199, 207 (S.D. Miss. 2006); *see also John v. National Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming Judge Trimble's dismissal of class allegations based on the complaint).[3]

---

[3] *See also* Fed. R. Civ. P. 23(d)(1)(d) ("the court may issue orders that . . . require the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"); *Hedgepeth v. Blue Cross & Blue Shield of Miss.*, 2006 WL 141624, at *1 (N.D. Miss. Jan. 18, 2006) (noting that the Fifth Circuit has upheld the power of district courts to dismiss class allegations prior to any extensive class-related discovery); *Lumpkin v. E.I. Du Pont De Nemours & Co.*, 161 F.R.D. 480, 481-82 (M.D. Ga. 1995); 5 *Moore's Federal Practice* § 23.60[3] (Matthew Bender 3d ed. 1997).

To obtain certification under Fed. R. Civ. P. 23, a plaintiff must satisfy the four requirements under Rule 23(a) (numerosity, commonality, typicality, and adequacy).  *See* Fed. R. Civ. P. 23(a).  Additionally, a plaintiff must satisfy one of the three requirements under Rule 23(b).  *See* Fed. R. Civ. P. 23(b).  In the present matter, Plaintiffs are seeking certification under Rule 23(b)(3), which requires that issues "common to class members predominate over any questions affecting individual members…"  *See* Fed. R. Civ. P. 23(b)(3); Dkt. # 47, ¶ 88.  As discussed below, the face of the Third Amended Complaint reveals that Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3).

      **a.**      **Plaintiffs' Allegations Do Not Satisfy the Predominance Requirement of Rule 23(b)(3)**

In determining whether the requirements of Rule 23 are satisfied, "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."  *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).  Moreover, because Rule 23 is procedural, not substantive, the substantive law to be analyzed cannot be subjected to shortcuts simply to achieve certification.  *Amchem Products v. Windsor*, 521 U.S. 591, 613 (1997); *Cimino v. Raymark Indus.*, 151 F.3d 297, 311 (5th Cir. 1998); *State of Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 327 (5th Cir. 1978).

---

To the extent that the standards under Fed. R. Civ. P. 12(b)(6) are applicable, the United States Supreme Court has jettisoned the idea that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1968-70 (2007).  Instead, a plaintiff "must plead more than labels and conclusions," that a "formulaic recitation of the elements of a cause of action will not do," and the "[f]actual allegations must be enough to raise the right to relief above the speculative level . . ."  *Id.* at 1964-65.  In light of expensive discovery in complex litigation, "a district court must retain the power to insist upon some specificity in pleading . . . lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people."  *Id.* at 1966-67.

The predominance inquiry under Rule 23(b)(3) requires that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members." *Unger*, 401 F.3d at 320. The "cause of action as a whole must satisfy the predominance requirement of [Rule 23](b)(3)." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996). Although it is similar to the commonality requirement of Rule 23(a), the predominance criterion is "far more demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. As the Fifth Circuit has described the predominance inquiry:

> [It] entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class. . . . Such an understanding prevents the class from degenerating into a series of individual trials.

*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003). Ultimately, it requires understanding how a trial on the merits will be conducted.

Numerous courts have dismissed class allegations at the pleadings stage where "individualized and highly personal issues pertaining to each class member patently overwhelm any arguably common issues." *Aguilar*, 2007 WL 734809, at *3; *see, e.g.*, *John v. National Sec. Fire & Cas. Co*, 2008 WL 394220, at *2 (W.D. La. 2008) (dismissing class allegations with prejudice where "a case by case factual inquiry would have to be made regarding the type, nature and complexity of the necessary repairs"); *Pollet v. Travelers Property Cas. Ins. Co*., 2001 WL 1471724, at *1-2 (E.D. La. Nov. 16, 2001); *Miner v. Blue Cross/Blue Shield*, 2001 WL 96524, at *2 (S.D.N.Y. Feb. 5, 2001) (dismissing class allegations on the pleadings where claim "requires an individualized assessment of each plaintiff's case").

By definition, the state law claims advanced by Plaintiffs on a class-wide basis require an **individualized assessment of each Plaintiff's case,** and therefore, should be advanced by individual Plaintiffs, if applicable.

Courts have found this to be the case for breach of contract claims. For example, in *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 602-603 (E.D. La. 2002), the plaintiffs sought to represent a class of Wal-Mart workers in claims of breach of contract, working off the clock, and other employment-related misconduct. The Court rejected the plaintiffs' assertion that common issues would predominate because, regarding the breach of contract claims, each plaintiff would have "to establish the existence of a contract, the terms of it, and a breach." The Court also refused to certify the working off the clock claims because of the many individualized issues that are present in any particular worker's circumstances on a given day. *See also Xavier v. Belfor Group USA, Inc.*, 254 F.R.D. 281 (E.D. La. 2008), citing *Basco*; *Robinson v. Wal-Mart Stores, Inc.*, 253 F.R.D. 396, 402 (S.D. Miss. 2008), citing *Basco* and stating "Additionally, as explained in the case of *Basco v. Wal-Mart Stores, Inc.*, 216 F.Supp.2d 592 (E.D.La. 2002), in which Rule 23(b)(3) class certification of off-the-clock work claims was denied on a finding that the predominance requirement was not satisfied…";

Under Louisiana Civil Code art. 1967, "[d]etrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.,* 376 F.3d 399, 403 (5th Cir. 2004). All of these elements of the analysis are purely individualized. No formula could be applied to the detrimental reliance claim to determine liability or damages.

Logically, this also applies to Plaintiffs' unjust enrichment, quantum meruit and conversion claims, as those claims are treated similarly.[4] *See Fogleman v. Cajun Bag & Supply Co.,* 638 So. 2d 706, 709 (La. Ct. App.), writ denied, 94-1900 (La. 10/28/94), 644 So. 2d 375 "([W]here a plaintiff seeks to employ a quantum meruit theory as a substantive ground for recovery, we believe the analysis is more properly made under the doctrine of *actio de in rem verso* or unjust enrichment.") The five elements required for a showing of unjust enrichment are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and the impoverishment, (4) there must be an absence of justification or cause for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. *Baker v. Maclay Properties Co.,* 94–1529 (La. 1/17/95); 648 So.2d 888, 897. Again, these elements require individualized assessments and are not properly handled on a class-wide basis. The first four elements by definition require individualized assessments. They are not suitable for class-wide treatment. *See also Robinson*, 253 F.R.D. at 402 ("The Court finds that the individual issues recognized in *Basco* would likely apply to the breach of contract and **conversion** claims alleged by Plaintiffs' in this case…" The Court decided on a Motion to Dismiss that the conversion claim was inappropriate for class certification).

Finally, the same applies to Plaintiffs' claims under the LWPA. As outlined above, La. R.S. 23:631 requires employers to pay all employees all wages due and owing within 15 days of that employee's termination or by the next regularly scheduled payday, whichever occurs earlier. It is unclear how these claims can be advanced on a class-wide basis, as there is nothing

---

[4] Notably, the Eastern District has dismissed quantum meruit claims at the pleadings stage and found they are not recognized by Louisiana law. *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F.Supp.2d 646, 649 (E.D. La. 2008)

formulaic that can be applied to liability or damages. The determination of whether Ochsner failed to pay a former employee all wages due and owing upon termination would require a dive into each former employee's payroll records, vacation records, and other records that could affect an employee's final paycheck.

The need for individualized calculation of potential damages also leads to these claims being inappropriate for a Rule 23 class action. In the Fifth Circuit, when individual damages cannot be determined by reference to a formulaic calculation, or when a proposed formula would require separate "mini-trials," the damages issue predominates over any common issues shared by the class and defeats certification. *Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. Appx. 350, 355 (5th Cir. 2005);[5] *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 Fed. Appx. 296, 297 (5th Cir. 2004) ("[t]he necessity of calculating damages on an individual basis, by itself, can be grounds for not certifying a class"); *Bell Atlantic v. AT&T Corp.*, 339 F.3d 294, 307-08 (5th Cir. 2003) ("class certification is not appropriate" because plaintiffs "failed to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement"); *O'Sullivan*, 319 F.3d at 745 (district court abused its discretion in certifying class "[i]n light of the individual calculation of damages that is required"); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998) (denying certification because "plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals"); *see also Xavier v. Belfor Group USA, Inc.*, 254 F.R.D. 281 (E.D. La. 2008) (Class treatment may not be suitable where the calculation of damages is not susceptible to a

---

[5] Unpublished opinions by the Fifth Circuit after January 1, 1996 are persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).

mathematical or formulaic calculation." *Citing Bell Atlantic*, 339 F. 3d 294, 307 (5th Cir. 2003); *Steering Comm. V. Exxon Mobil Corp.*, 461 F. 3d 598 (5th Cir. 2006).

Also, as outlined above, to recover penalty wages and attorney's fees under the LWPA, a Plaintiff must make a demand **prior** to instituting a claim. La R.S. 23:632. It is unclear how this could be done on a class-wide basis. Quite simply, this is not the type of claim that can be handled on a class-wide basis. This is especially true considering the named Plaintiffs have failed to identify which types of wages are owed or how that could be determined on a class-wide basis. The Plaintiffs wish to cast a net over all former Ochsner employees within the last three years without providing any detail as to how this claim could be litigated on a class-wide basis without individual assessments of liability and/or damages. Based on the foregoing, Rule 23 class-wide treatment is inappropriate for Plaintiffs' claims of conversion/misappropriation, breach of contract/detrimental reliance/unjust enrichment and for alleged violations of the LWPA, La. R.S. 23:631. Any such claims must be advanced by individual Plaintiffs.

**5.      Plaintiffs Do Not State Cognizable ERISA Claims**

Plaintiffs claim that Defendants breached their fiduciary duty and committed recordkeeping violations by failing to credit Plaintiffs' 401(k) plan for all hours worked. (Dkt. # 47, ¶¶ 57-72). Plaintiffs concede in their Third Amended Complaint that "[p]ursuant to the terms of the Retirement Plan, employees' rights to share in the contributions to the Plan (and their employer's required matching contributions) are dependent, in part, **on their eligible compensation**, including, among other things, employees' **wages and overtime compensation**." (*Id.*, ¶ 63 (emphasis added)). Plaintiffs' continue that "[o]n information and belief, the governing instrument of the Retirement Plan confers on Defendants discretionary authority, responsibility, and/or control with respect to the **crediting of compensation**, thereby

rendering Defendants fiduciaries in that regard." (*Id.*, ¶ 68 (emphasis added)). Plaintiffs allege that "Defendants have exercised actual discretionary authority, responsibility, and/or control in determining what **compensation** would and would not be credited as eligible compensation under the Retirement Plan." (*Id.*, ¶ 69 (emphasis added)). They continue that "[t]hrough Defendants' exercise of such discretion, they have been fiduciaries of that Plan with respect to the crediting of **compensation**." (*Id.* (emphasis added)). Plaintiffs allege that "[d]efendants have breached their fiduciary duties by failing to credit **overtime compensation** and other wages due to the ERISA Named Plaintiffs and members of the ERISA Class and by failing to fully match employer contributions, which were required as **eligible compensation** under the Plan." (*Id.*, ¶ 70 (emphasis added). Therefore, Plaintiffs admit throughout their ERISA related allegations that it is an employee's **compensation** which determines what a 401(k) distribution should be, and not the amount of hours an employee **should have** been credited if his or her time records were correct.

This is relevant to both of Plaintiffs' claims under ERISA, including recordkeeping and alleged breach of fiduciary duties. Related to Plaintiffs' breach of fiduciary duty claim, even though Plaintiffs parrot ERISA's definition of a fiduciary, it is clear Defendants were not acting in a fiduciary manner even if Plaintiffs' claims are true.  ERISA pertinently defines a fiduciary as follows:

> (21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets…or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21). If Plaintiffs' allegations are true and Defendants decided to withhold wages, both overtime and straight, this was a corporate business decision, and Defendants were

not acting as fiduciaries under ERISA as required to proceed with their claims. *LePage v. Blue Cross & Blue Shield of Minnesota*, 2008 WL 2570815, 5-6 (D. Minn. June 25, 2008). The district court in *LePage* stated:

> "Setting compensation levels is a business decision or judgment made in connection with the on-going operation of a business." *See Eckelkamp v. Beste*, 201 F.Supp.2d 1012 (E.D. Mo. 2002), *aff'd*, 315 F. 3d 863 (8th Cir. 2002). Consequently, ERISA does not govern Blue Cross's business decision about how to classify an employee for payroll and FLSA purposes… But no such duty exists: An employer's discretion in determining salaries is a business judgment which does not involve the administration of an ERISA plan or the investment of an ERISA plan's assets. Such a decision may ultimately affect a plan indirectly but it does not implicate fiduciary concerns regarding plan administration or assets. Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits.

(*Id.*); *see also Barrus v. Dick's Sporting Goods, Inc.*, 732 F.Supp. 2d 243 (W.D. N.Y. 2010) ("The Court determines that Plaintiffs' allegations fail to support a plausible claim that Defendants were acting as fiduciaries when they allegedly failed to report all hours of service. In determining the wage policy, Defendants were not acting as plan fiduciaries, and the Court finds unpersuasive the allegation that Defendants had a legal duty as ERISA fiduciaries to investigating crediting overtime pay.")

Plaintiffs admit that it was an employee's **actual compensation** which determined distributions to the 401(k) plan.  District court cases from all over the country confirm that the alleged failure to credit overtime hours was not a breach of a fiduciary duty under ERISA because the crediting of the hours did not matter under the retirement plans. The same applies here. *Zipp v. World Mortgage Company*, 632 F.Supp.2d 117 (M.D.Fla. 2009), *citing LePage* at 5-6; *Steavens v. Electronic Data Systems Corp*, No. 07-14536, 2008 WL 3540070 (E.D. Mich. Aug. 12, 2008), which stated:

The problem with Plaintiffs' argument, as recognized in *LePage*, is that it is unworkable under ERISA. Plaintiffs readily concede that Defendant can make business decisions that adversely impact their benefits without running afoul of ERISA. Nevertheless, Plaintiffs seek to impose a fiduciary duty on Defendant to investigate its business decisions in order to avoid the possibility ... that a plan participant would be deprived of pension credits if an employer illegally withheld wages. But the fact is that "[s]etting compensation levels is a business decision or judgment made in connection with the ongoing operation of a business," and both legal and illegal business decisions can have negative impacts on benefits plans. Why, then, should a fiduciary not be required to oversee all business decisions regardless of their legality? The reason is that Congress did not enact ERISA to govern the propriety of any decisions made in the capacity of an employer. The propriety of those decisions is governed by other federal statutes.

The practical effect of the duty proposed by Plaintiffs (i.e., automatically crediting employees for wages that should have been paid but were not) is that an ERISA fiduciary would have to oversee employers' business decisions to ensure that those decisions did not deprive any employee of a wage that should have been paid. Thus, if Plaintiffs' claim were to stand, an ERISA fiduciary would be required to regulate purely corporate behavior, a result Congress did not intend. To the contrary, the focus of ERISA is on the management and administration of benefits plans. Congress only sought to impose fiduciary duties on decisions dealing with plan management and administration to ensure that the funds promised to employees would be invested wisely and managed honestly. If Congress intended for ERISA fiduciaries to monitor and second-guess employers' business judgments to ensure they complied with various employment laws, allowing employers to act as ERISA fiduciaries is an awkward way of doing so.

*See also Maranda v. Group Health Plan, Inc.*, Civ. No. 07-4655, 2008 WL 2139584 (D.Minn. May 20, 2008) (Plan contributions were based on compensation "actually paid to the employee, not on alleged owed overtime pay," and therefore the court found that the defendant "had no obligation to make contributions based upon overtime hours for which plaintiffs received no actual compensation and was indeed following the terms of the Plan when it did not make such a contribution.")

The same reasoning applies to Plaintiffs' claims for recordkeeping violations. "When the records an employer allegedly failed to maintain are not necessary to determine the benefits due under a particular plan, an ERISA record-keeping claim will not lie." *Winfield v. Citibank, N.A.*, 842 F.Supp.2d 560 (S.D.N.Y. 2012). In this matter, the records Plaintiffs claim Defendants failed to maintain are those indicating the number of hours Plaintiffs worked. However, as Plaintiffs admit in their Third Amended Complaint, under the Plan at issue in this case, it is the compensation actually paid to employees, "rather than the number of hours worked, which is relevant to allocating contributions." (*Id.*). "Thus, under the Plan at issue here, records of hours worked are not records which are necessary 'to determine the benefits due' to employees within the meaning of section 209(a)(1) of ERISA." (*Id.*). *See also Henderson v. UPMC*, 640 F.3d 524, 529 (3rd Cir. 2011) (collecting cases finding that, where plan language defined compensation as "amounts paid by an Employer to an Employee" or in similar terms, employer had no obligation under ERISA to record amounts earned or hours worked.)

For these reasons, Plaintiffs ERISA claims, including their class-wide ERISA claims, should be dismissed, with prejudice.

### 6.   Plaintiffs Failed to Exhaust Their Administrative Remedies as Required by ERISA

Even if Plaintiffs do state viable claims under ERISA, Plaintiffs admit they did not exhaust their administrative remedies as required to bring a claim under ERISA. (Dkt. #47, ¶ 36). Plaintiffs allege the following:

> Upon information and belief, Ochsner failed to properly record Plaintiffs' and Class Members' hours worked; therefore, it would be futile for Plaintiffs/Class Members to attempt to exhaust administrative remedies under the Plan since any documents that exist reflecting any hours worked do not adequately reflect the actual hours such employees worked due to Defendants' violations. Also, administrative exhaustion of remedies would also be futile since Ochsner has already admitted that it was aware that

> it did not properly record such hours actually worked and therefore
> was on notice that it did not fully credit (and has not fully credited)
> all benefits required by the Plan to Plaintiffs/Class Members.

(*Id.*). As quoted, Plaintiffs allege that their failure to exhaust administrative remedies should be excused because doing so would have been futile. Plaintiffs are mistaken, and their ERISA claims should be dismissed for their admitted failure to exhaust administrative remedies.

Plaintiffs' claims are made under a 401k plan which Plaintiffs admit is governed by ERISA. For cases such as these, the Fifth Circuit has adopted the "exhaustion doctrine," which provides that a plaintiff may not sue for benefits under an ERISA plan prior to exhausting his administrative remedies. *See Lacy v. Fulbright & Jaworski, Ltd. Liab. P'ship Long Term Disability Plan*, 405 F.3d 254, 256 (5th Cir. Aug 31, 2005); *Denton v. First Nat'l Bank of Waco Tex.,* 765 F.2d 1295, 1297 (5th Cir. 1985); *see also Smith v. Pan Am. Life Ins. Co.*, No. 98-1733, 1998 WL 564274, at * 2 (E.D.La. Aug. 31, 1998) (explaining that the "exhaustion doctrine" is applicable to ERISA plans). Indeed, "[t]he Fifth Circuit has held that [a plan's] internal appeal procedures are mandatory before a plan participant can file a lawsuit challenging the denial of benefits." *See United Healthcare Ins. Co. v. Levy,* 114 F.Supp.2d 559, 565 (N.D. Tex. 2000) (citing *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 n.2 (5th Cir. 1990)). In other words, an ERISA claimant has a duty to fully utilize a plan's internal appeal procedures prior to filing a lawsuit. *See Id.*; *Davis v. AIG Life Ins.*, 945 F.Supp. 961, 967 (S.D. Miss. Aug 31,1995).

Additionally, the "exhaustion doctrine" requires that a claimant exhaust *all available* administrative remedies, not just the particular remedy the claimant has selected to pursue. *Davis*, 945 F.Supp. at 967. Such a requirement strikes the appropriate balance between judicial intervention and the ERISA fiduciary's discharge of its duties. *See Denton*, 765 F.2d at 1303. The doctrine also works to "keep from turning every ERISA action, literally, into a federal case." *Pan Am.*, 1998 WL 564274, at *2. In *Hall v. National Gypsum Co.,* 105 F.3d 225, 231 (5th Cir.

1997), the Fifth Circuit explained that the purposes of the "exhaustion doctrine" include "minimizing the number of frivolous ERISA suits, promoting the consistent treatment of benefit claims, providing a non-adversarial dispute resolution process, and decreasing the time and cost of claims settlement." *Hall*, 105 F.3d at 231. The "exhaustion doctrine" also serves to provide a clear and complete record of administrative action for courts to consider in the event that litigation later ensues. *See id*. The "exhaustion doctrine" also assures that "judicial review is made under the arbitrary and capricious standard, not de novo." *Id*. Finally, the "exhaustion doctrine" works "to uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts." *Denton*, 765 F.2d at 1300. Thus, as the plan in question is governed by ERISA, Plaintiffs must satisfy the "exhaustion doctrine" before taking legal action on a denial of benefits. Plaintiffs admit they have failed to do so, and their futility argument is unavailing.

Exceptions to the exhaustion requirement exist where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be a patently futile course of action. *Davis v. AIG Life Ins*., 945 F.Supp. 961, 967 (S.D.Miss.1995); *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir.1985). The cases in which the Fifth Circuit and other courts in this jurisdiction have excused a plaintiff's failure to appeal usually involve a finding of bias or hostility on the part of the review board or a determination that the appeals process is inadequate. *See Hall v. National Gypsum Co.*, 105 F.3d 225, (5th Cir.1997) (holding that the plaintiff was not required to exhaust administrative remedies where the plan's appeal body had been eliminated); *Denton v. First Nat'l Bank*, 765 F.2d 1295, 1303 (5th Cir.1985) (concluding that the futility exception was inapplicable where the evidence did not show that the committee was not hostile or bitter toward the claimant); *Hutchinson v. Wickes Companies, Inc.*, 726 F.Supp. 1315, 1321 (N.D.Ga.1989) (holding that

requiring the plaintiffs to resort to administrative remedies would be futile because the plan no longer exists and since "[i]t would be impossible for the [p]lan to pay the thousands of dollars sought by the plaintiffs without the intervention of this court directing ... [the plan fiduciary] to restore the common surplus of the [p]lan").

In the Fifth Circuit, "[f]utility of appeal will serve as an exception to the administrative exhaustion requirement only if a plaintiff can make a clear showing that the plan administrators harbor bitterness and hostility for the claimant." *Brown*, 881 F.Supp. at 259 (*citing Denton v. First Nat'l Bank,* 765 F.2d 1295, 1303 (5th Cir.1985)). Moreover, "[m]erely alleging that an appeal would be futile or that the administrators harbor bitterness and hostility is insufficient to create an exception to the general rule ." Id.

Here, Plaintiffs have not alleged that the plan administrator or any Defendant harbored any biases toward them or that the Plan's appeals processes was inadequate in any way. Thus, "Plaintiffs' reason for any potential class members' failure to exhaust their administrative remedies does not satisfy the futility exception, as recognized by the Fifth Circuit…" *Gosselink v. American Telephone & Telegraph, Inc.*, 1993 WL 33737340, (S.D. Tex. Aug. 9, 1999).

**D.     CONCLUSION**

The FLSA is the sole remedy for Plaintiffs' overtime claims.  Any state law claims made by Plaintiffs requesting overtime should be dismissed. Plaintiffs' Wage Payment Claim should be dismissed, as no demand was made prior to litigation.  None of Plaintiffs' state law claims should be allowed to proceed on a class-wide basis, as the facts needed to determine liability and/or damages are extremely individualized and not subject to any common formula or facts. Finally, Plaintiffs' ERISA claims are defective and should be dismissed.

Respectfully submitted,

/s/ David K. Theard
Jennifer F. Kogos (LA # 25668)
David K. Theard (LA # 31987)
Jones Walker LLP
201 St. Charles Avenue – 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8154
Facsimile:  (504) 589-8154
jkogos@joneswalker.com
dtheard@joneswalker.com

**Attorneys for Defendants, Ochsner Health System and Ochsner Clinic Foundation**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of Court on this 19th day of July, 2017, to be served on all counsel of record by operation of the Court's electronic filing system.

/s/ David K. Theard