## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DESIREE BERGERON ET AL.**                    **CIVIL ACTION**

**VERSUS**                                      **No. 17-519**

**OCHSNER HEALTH SYSTEM**                       **SECTION I**
**ET AL.**

## ORDER & REASONS

Before the Court is defendants' partial motion[1] to dismiss the named plaintiffs'

third amended complaint ("complaint").[2]  The named plaintiffs oppose[3] the motion.

For the foregoing reasons, the Court will grant the motion in part and deny it in part.

## I.

The named plaintiffs are current and former employees of defendants Ochsner

Health System and Ochsner Clinic Foundation (collectively, "Ochsner").[4]  They

include certified registered nurse anesthetists, registered nurses, and nurse first

assistants—all full-time hourly positions involved in direct patient care.[5]

In a nutshell, the named plaintiffs allege that Ochsner underpaid them and

similarly situated employees.[6]  In fact, Ochsner has made partial payments of owed

back wages.[7]

---

[1] R. Doc. No. 49.
[2] R. Doc. No. 47.
[3] R. Doc. No. 60.
[4] R. Doc. No. 47, ¶ 6.
[5] *Id.* ¶¶ 6, 14.
[6] *Id.* ¶ 10
[7] *Id.* ¶¶ 22, 24, 31.

1

According to the named plaintiffs, for a number of years Ochsner failed to correctly calculate employee weekly pay—both regular and overtime—by excluding "shift differentials" and "hourly on-call and callback pay" from employees' regular rates of pay.[8]  Moreover, the named plaintiffs allege that Ochsner "automatically deduct[ed] lunch periods" from employees' shift times even when employees worked during those periods, which likewise shortchanged employees come payday.[9]

The named plaintiffs also allege that Ochsner failed to pay some employees stipends and bonuses that Ochsner had agreed to pay them.[10]  They further contend that these stipends and bonuses should have been included in employees' regular rates of pay for purposes of calculating overtime pay, and that their exclusion from regular rates of pay undervalued the overtime that employees were owed.[11]

The named plaintiffs brought this lawsuit against Ochsner on behalf of themselves, as well as similarly situated current and former Ochsner employees. They allege that Ochsner's underpayment of employees violated both the Fair Labor Standards Act ("FLSA") and the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as Louisiana law.  They seek to assert their FLSA claims as a collective action under the FLSA, and assert their ERISA and Louisiana law claims as class actions under Rule 23 of the Federal Rules of Civil Procedure.

## II.

---

[8] *Id.* ¶¶ 11, 31.  "Shift differential" refers to differences in pay between, for example, day shift and night shift, or weekday shift and weekend shift.  *See id.* ¶ 11.
[9] *Id.* ¶ 11.
[10] *Id.* ¶¶ 24-26.
[11] *Id.* ¶ 11.

2

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, where a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

On a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Where

"the complaint 'on its face show[s] a bar to relief,'" then dismissal is the appropriate course. *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## III.

Ochsner seeks partial dismissal of the named plaintiffs' complaint. Specifically, Ochsner seeks dismissal of the named plaintiffs' Louisiana Wage Payment Act ("LWPA") claims;[12] state law claims to the extent that they request unpaid overtime wages;[13] and all ERISA claims.[14] Ochsner also seeks to strike the named plaintiffs' state law class action allegations.[15] Lastly, Ochsner suggests that the possibility of double recovery by the named plaintiffs at the end of the litigation warrants the dismissal of certain claims now.[16]

The Court will address each of Ochsner's arguments in turn.

## A.

Ochsner argues that the named plaintiffs' claims under the LWPA should be dismissed for failure to make demand for payment prior to the commencement of the

---

[12] *See* R. Doc. No. 49-1, at 11-12.  In its reply, Ochsner attacks the named plaintiffs' claims for penalty wages and attorney's fees under the LWPA, but does not attack their LWPA claims for unpaid wages.  *See* R. Doc. No. 69-1, at 3.  The Court will continue to treat Ochsner's motion as challenging the claims for unpaid wages, however, because Ochsner's memorandum in support of its motion does so.

[13] *See* R. Doc. No. 49-1, at 11.

[14] *See id.* at 18-25.

[15] *See id.* at 12-18.

[16] *See id.* at 2-3; *see also* R. Doc. No. 69-1, at 2-3 (arguing that a "duplicative and unnecessary cause of action should be dismissed," *id.* at 3).

present litigation.[17]  For their part, the named plaintiffs contend in their complaint that the complaint itself "serves as amicable demand" in satisfaction of the LWPA.[18]

**i.**

The LWPA's main purpose "is to compel an employer to pay the earned wages of an employee promptly after his dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers." *Slaughter v. Bd. of Supervisors of S. Univ. and Agric. and Mech. College*, 76 So. 3d 438, 446 (La. Ct. App. 1st Cir. 2011).  To that end, the LWPA obligates an employer to quickly pay an employee whatever amount the employee is due upon her discharge or resignation.  La. R.S. § 23:631(A)(1)(a)-(b); *see also Becht v. Morgan Building & Spas, Inc.*, 843 So. 2d 1109, 1111 (La. 2003) (noting that the LWPA "creates liability for an employer who fails to timely pay wages owed to an employee after the employee voluntarily [or involuntarily] leaves employment").  To state a claim for unpaid wages under the LWPA, an employee must allege "i) that [the defendant] was her employer, ii) that the employee/employer relationship ceased to exist, iii) that at the time that the employee/employer relationship ended she was owed wages, and iv) that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days." *Dillon v. Toys R Us-Delaware Corp.*, No. 2016-0983, 2017 WL 2351490, at *2 (La. Ct. App. 4th Cir. May 31, 2017).

---

[17] R. Doc. No. 49-1, at 11.
[18] R. Doc. No. 47, ¶ 56.

The LWPA also punishes employers who fail to promptly pay their former employees:

> any employer who fails or refuses to comply with [that obligation] shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

*Id.* § 23:632(A).  In addition to penalty wages, the LWPA provides that a court shall award "[r]easonable attorney fees" to an employee who files a "well-founded suit for any unpaid wages whatsoever," as long as the employee waits at least three days between "making the first demand following discharge or resignation" and filing suit. *Id.* § 23:632(C).

The Louisiana Supreme Court[19] has held that "[i]n order to recover penalty wages and attorney's fees under [the LWPA], the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Becht*, 843 So. 2d at 1112; *see also Wortham v. Acadia Healthcare, LLC*, 160 So. 3d 602, 605 (La. Ct. App. 3rd Cir. 2015) (noting that a plaintiff "has the burden of proving" each of the elements of the *Becht* standard); *cf. Alumbaugh v. Global Data Sys., Inc.*, No. 08-1281, 2008 WL 5377673, at *6 (La. Ct. App. 1st Cir. 2008) (concluding that plaintiff made a *prima facie* showing that penalty wages were owed under the *Becht* standard,

---

[19] "To determine Louisiana law, [federal courts] look to the final decisions of the Louisiana Supreme Court."  *In re Katrina Canal Breaches Liti.*, 495 F.3d 191, 206 (5th Cir. 2007).

because plaintiff "made written demand" to defendant's "Payroll Administrator/Human Resources for [defendant] at [defendant's] place of business"). "Being penal in nature," the penalty wages provision of the LWPA "must be strictly construed" and "yield to equitable defenses." *Kaplon v. Rimkus Consulting Grp., Inc., of La.*, 39 So. 3d 725, 733 (La. Ct. App. 4th Cir. 2010). For example, a court cannot award penalty wages where a "bona fide dispute exists over the amount of wages due." *Id.*

### ii.

For starters, demand is not required to assert a claim for unpaid wages under the LWPA. *See* La. R.S. § 23:631(A)(1)(a)-(b); *Schuyten v. Superior Sys., Inc.*, 952 So. 2d 98 (La. Ct. App. 1st Cir. 2007) ("The duty to pay the actual wages due is not dependent on the employee making a demand for payment."); *see also Dillon*, 2017 WL 2351490, at *2 (explaining the elements of a LWPU unpaid wages claim). As such, an employee's alleged failure to make demand prior to filing suit does not merit dismissal of an LWPA claim for unpaid wages.

A claim for penalty wages and attorney's fees is a different matter, as demand is required to recover them. *See Becht*, 843 So. 2d at 1112 (explaining the elements of a claim for penalty wages and attorney's fees under the LWPA). The named plaintiffs do not dispute that they did not make a pre-suit demand for wages. Rather, they argue that the filing of the complaint itself constitutes making the statutorily required demand on Ochsner.

However, one of the elements of a claim for penalty wages and attorney's fees—on which the named plaintiffs have the burden of proof—is that "demand for payment was made *where the employee was customarily paid.*" *Id.* (emphasis added). Suffice it to say, Ochsner's employees are not customarily paid in Section I of the U.S. District Court at 500 Poydras Street. As such, the named plaintiffs have failed to allege facts necessary to support a required element of a claim for penalty wages and attorney's fees—and so they have failed to state a claim upon which relief can be granted. Therefore, the Court will dismiss the named plaintiffs' claims for penalty wages and attorney's fees under the LWPA.

## B.

Next, Ochsner argues that the named plaintiffs' state law claims, including the remaining LWPA claims, should be dismissed to the extent that those claims seek payment of overtime wages. According to Ochsner, Louisiana law does not mandate the payment of overtime wages[20] and such wages cannot be recovered via the named plaintiffs' state law claims.

---

[20] *See, e.g.*, *Smith v. Diamond Offshore Mgmt. Co.*, No. 03-2024, 2003 WL 23095586, at *4 (E.D. La. Dec. 23, 2003) (Engelhardt, J.) (dismissing the plaintiff's LWPA claim for overtime wages, on the ground that Louisiana law does not mandate the payment of overtime wages); *Barrios v. Title*, No. 96-727, 1996 WL 312063, at *1 (E.D. La. June 10, 1996) (Duval, J.) ("An employee's right to overtime wages is governed exclusively by § 207 of the FLSA; there is no Louisiana state law requiring the payment of overtime wages."); *Odom v. Respiratory Care, Inc.*, 754 So. 2d 252, 256 (La. Ct. App. 1st Cir. 1999) ("The payment of overtime wages is clearly governed by the FLSA."); *but see Kidder v. Statewide Transport, Inc.*, 129 So. 3d 875, 881 (La. Ct. App. 3rd Cir. 2013) (holding that the LWPA "requires payment of overtime compensation to employees engaged exclusively in intrastate commerce").

A review of the complaint reveals that the named plaintiffs explicitly exclude payment of unpaid overtime wages from the damages sought pursuant to those state law claims.[21]  The named plaintiffs have therefore addressed Ochsner's concern.

## C.

Ochsner also argues that the Court should dismiss the named plaintiffs' ERISA claims.  The named plaintiffs allege that Ochsner 1) breached its fiduciary duty under ERISA by failing to credit overtime compensation and other wages toward employees' benefits under the Ochsner-sponsored employee benefit plan ("plan"), and 2) failed to maintain accurate plan records as required by ERISA.  (Ochsner does not argue that the plan is not subject to ERISA.)

Ochsner contends that, even if the named plaintiffs' allegations are true and Ochsner withheld wages and overtime compensation, "this was a corporate business decision" and not a decision that Oschner made in the capacity of an ERISA fiduciary.[22]  Moreover, Ochsner argues that the named plaintiffs base their ERISA recordkeeping claim on Ochsner's alleged "failure to record and/or report all of the hours worked," although they admit that benefits under the plan were based on compensation, not hours.[23]  Lastly, Ochsner asserts that—even if the named

---

[21] *See* R. Doc. No. 47, ¶¶ 48, 50-52, 56.  The Court points out that, in the event that the named plaintiffs attempt to assume a different position at a later point in the litigation, the common law doctrine of judicial estoppel may bar the named plaintiffs from doing so.  *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 334-35 (5th Cir. 2004) (discussing the doctrine).

[22] R. Doc. No. 49-1, at 19.

[23] R. Doc. No. 47, ¶ 64.

plaintiffs have stated otherwise viable ERISA claims—the named plaintiffs did not exhaust their administrative remedies prior to filing the present action.

### i.

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alteration in original).  To that end, ERISA provides that a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," as well as "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).

Moreover, an ERISA fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).  ERISA fiduciaries have an obligation to "keep the interests of beneficiaries foremost in their minds" when acting in their capacities as fiduciaries. *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298 (5th Cir. 2000).

A fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA] shall be personally liable to make good to such

plan any losses to the plan resulting from each such breach, . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). ERISA authorizes plan participants and beneficiaries to bring a civil action seeking "appropriate relief" in the case of a breach of fiduciary duty. *Id.* § 1132(a)(2).

Moreover, a participant or beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). A participant or beneficiary may also bring a civil action "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." *Id.* § 1132(a)(3); *but see Lee v. MBNA Long Term Disability & Benefit Plan*, 136 Fed. App'x 734 (6th Cir. 2005) (noting that "[t]he Supreme Court limited the relief afforded by § 1132(a)(3) to plan participants or beneficiaries [who] are not able to avail themselves of other remedies under § 1132" and citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).

With respect to who constitutes a "fiduciary" under ERISA, a fiduciary is one who "act[s] in the capacity of manager, administrator, or financial adviser to a 'plan.'" *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000) (citing 29 U.S.C. § 1002(21)(A)). More specifically:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders

11

investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "[A] person or entity may be deemed a fiduciary either by assumption of the fiduciary obligations (the functional or *de facto* method) or by express designation by the ERISA plan documents." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F. Supp. 2d 511, 543 (S.D. Tex. 2003). Courts "give[ ] the term fiduciary a liberal construction in keeping with the remedial purpose of ERISA." *Reich v. Lancaster*, 55 F.3d 1034 1046 (5th Cir. 1995). The question of fiduciary status is a mixed question of fact and law. *Id.* at 1044.

"[A]n employer who sponsors an employee plan [subject to ERISA] may also serve as a fiduciary of that plan." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 248 (5th Cir. 2008). An employer who serves as a plan fiduciary, however, only acts in its capacity as fiduciary when "performing a fiduciary function." *Pegram*, 530 U.S. at 226; *see also id.* at 225 ("Employers . . . can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.,* firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.,* modifying the terms of a plan as allowed by ERISA to provide less generous benefits)."); *cf. Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 537 (5th Cir. 2016) (describing an employer's choice to amend "the composition or design" of an pension plan "as a settlor function, immune from fiduciary strictures"). Yet ERISA requires that an employer who also serves as a fiduciary— a "fiduciary with two hats,"

so to speak—"wear only one at a time, and wear the fiduciary hat when making *fiduciary* decisions." *Pegram*, 530 U.S. at 225 (emphasis added).

### ii.

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must state factual allegations sufficient to show "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016); *see also Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Invest. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (same); *Turner v. Talbert*, No. 04-450, 2009 WL 3199189, at *2 (M.D. La. Sept. 25, 2009) (Brady, J.) (same). Accepting the factual allegations in the well-pleaded complaint as true and construing them in the light most favorable to the named plaintiffs, the Court concludes that the named plaintiffs have stated an ERISA claim for breach of fiduciary duty against Ochsner.

The named plaintiffs allege that the plan's "governing instrument" confers on Ochsner "discretionary authority . . . with respect to the crediting of compensation."[24] The named plaintiffs further allege that "employees' rights to share in contributions to" Ochsner's plan "are dependent, in part, on their eligible compensation, including, among other things, employees' wages and overtime compensation."[25] Finally, the named plaintiffs allege that Ochsner did not fulfill its responsibility and obligation

---

[24] R. Doc. No. 47, ¶ 68.
[25] *Id.* ¶ 63; *see also id.* ¶ 70 (alleging that "overtime compensation" is "required as eligible compensation" under the plan).

13

under the plan's governing instrument to "credit overtime compensation and other wages" toward employees' plan benefits—in other words, that Ochsner exercised its discretionary authority respecting plan management in such a way as to deny the named employees the plan benefits to which they are entitled.[26]   These factual allegations are sufficient to survive Ochsner's motion to dismiss.

Ochsner's focus on corporate business decisions is inapt.  ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument" and "specify the basis on which payments are made to and from the plan."  29 U.S.C. § 1102(a)(1), (b)(4).  Moreover, ERISA directs "that plans be administered, and benefits be paid, in accordance with plan documents."  *Egelhoff v. Egelhoff*, 532 U.S. 141, 150 (2001); *see also* 29 U.S.C. § 1104(a)(1)(D).

In short, it is one thing for a business to set compensation for, or withhold compensation from, an employee—examples of corporate business decisions that fall outside ERISA's purview.  *See LePage v. Blue Cross and Blue Shield of Minn.*, No. 08-584, 2008 WL 2570815, at *5 (D. Minn. June 25, 2008) (Kyle, J.); *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), *aff'd,* 315 F.3d 863 (8th Cir. 2002); *cf. Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995) ("ERISA is designed to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one of them.").  It is quite another for the business to not credit an employee's wages and overtime toward an ERISA-regulated pension or welfare plan, where the plan's

---

[26] *Id.* ¶ 70.

14

documents provide that benefits under the plan are determined based on the uncredited wages and overtime.  *See* 29 U.S.C. § 1102(a)(1), (b)(4); *id.* § 1104(a)(1)(D).

Neither the named plaintiffs nor Ochsner has submitted plan documents to the Court.  Therefore, the Court must rely on the named plaintiffs' factual allegations in their complaint.  Those factual allegations show that the benefits under the written terms of Ochsner's plan are based on "eligible compensation," which is defined to include "wages and overtime compensation."[27]  Ochsner, "as plan administrator, has a fiduciary duty to credit [the named plaintiffs] with the compensation that is required to be credited *under the terms of the plan*."  *LePage*, 2008 WL 2570815, at *5 (internal citations omitted) (emphasis in original); *cf. Mathews v. ALC Partner, Inc.*, No. 08-10636, 2009 WL 3837249, at *1 (E.D. Mich. Nov. 16, 2009) (Murphy, J.) ("[I]f the [ERISA] retirement plan determined an employee's ERISA benefits based on the number of hours worked or wages *earned,* and not merely on wages actually *paid,* then the decision whether to credit hours worked—even unpaid hours—would be a fiduciary decision under ERISA."); *Stickle v. SCIWestern Market Support Ctr., L.P.*, No. 08-83, 2008 WL 4446539, at *19 (D. Ariz. Sept. 30, 2008) (Murguia, J.) (noting that "crediting hours is a fiduciary function" under ERISA where hours are "necessary to determine participants' participation, vesting and accrual of rights" under an ERISA-regulated plan).

Thus Ochsner has a fiduciary duty to credit all compensation that the plan documents require it to credit—and a failure to do so would violate that duty.  *See,*

---

[27] *Id.* ¶¶ 63, 70.

*e.g., LePage*, 2008 WL 2570815, at *5.   Accepting the named plaintiff's factual allegations as true and construing them in the light most favorable to the named plaintiffs, the named plaintiffs have stated claims against Ochsner for breach of fiduciary duty under ERISA.

### iii.

The named plaintiffs also allege that Ochsner violated ERISA's recordkeeping requirements.   ERISA provides that "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."   29 U.S.C. § 1059(a)(1).   In deciding what records are "sufficient to determine the benefits due" to employees, courts "evaluat[e] how contributions are allocated under the pension plan."   *Henderson v. UPMC*, 640 F.3d 524, 528 (3d Cir. 2011); *cf. Trs. of Chi. Painters & Decorators Pension Health & Welfare & Deferred Savings Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.,* 493 F.3d 782, 786 (7th Cir. 2007) ("The collective bargaining agreement in this case required [the employer] to contribute benefits based on the hours worked. Therefore [the employer] had an obligation to maintain records of the hours worked that would be 'sufficient to determine the benefits due.'").

With respect to their claims that Ochsner violated this recordkeeping requirement, the named plaintiffs' allege that Ochsner "fail[ed] to record and/or report all of the hours worked" by the named plaintiffs and other Ochsner employees.[28]   Ochsner seizes on the word "hours" to argue that the Court should

---

[28] *Id.* ¶ 64.

dismiss these recordkeeping claims, as the named plaintiffs "admit" that plan benefits stem from "eligible compensation," not hours.[29]

The Court rejects Ochsner's position. According to the complaint, the named plaintiffs and similarly situated employees are hourly employees. So the number of hours worked each week by each employee determines that employee's compensation, including any overtime pay—and "eligible compensation," including overtime, is the alleged basis for calculating benefits under the plan.[30]  In other words, the number of hours worked matters when determining the benefits to which the named plaintiffs and similarly situated employees are entitled under the plan. 29 U.S.C. § 1059(a)(1); *cf. Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 (S.D.N.Y. 2012) ("Here, the only records the plaintiffs claim the defendant failed to maintain are those indicating the number of hours the plaintiffs worked. However, under the Plan at issue in this case, it is the compensation actually paid to employees, rather than the number of hours worked, which is relevant to allocating contributions."); *Mathews*, 2009 WL 3837249, at *3-*6 (analyzing whether the ERISA plan at issue determined benefits based on wages *earned* or wages *paid*, as determinative of whether the plaintiffs could state ERISA recordkeeping claims).

---

[29] R. Doc. No. 49-1, at 20; *see also* R. Doc. No. 47, ¶ 63.
[30] R. Doc. No. 47, ¶ 63.

Accepting the factual allegations in the complaint as true and construing them in the light most favorable to the named plaintiffs, the Court concludes that the named plaintiffs have stated claims for recordkeeping violations against Ochsner.[31]

**iv.**

In addition, Ochsner contends—and the named plaintiffs admit[32]—that the named plaintiffs failed to exhaust administrative remedies prior to bringing their ERISA claims.  However, only "claimants seeking *benefits* from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000) (emphasis added).  Claims for breach of fiduciary duty under ERISA do not require exhaustion.  *See Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (en banc).  This dual treatment depending on the type of claim makes sense: "Unlike a claim for benefits under a plan, which implicates the expertise of a plan fiduciary, adjudication of a claim for a violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary." *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999).

In this case, "the [named] plaintiffs do not seek the distribution of any benefits, but instead assert fiduciary breach [and recordkeeping] claims not requiring

---

[31] The U.S. Court of Appeals for the Seventh Circuit has characterized ERISA's employer recordkeeping obligation under 29 U.S.C. § 1059(a)(1) as a fiduciary duty. *See Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811 (7th Cir. 1994) (citing 29 U.S.C. § 1059); *see also Powell v. Eustis Eng'g Co., Inc.*, No. 02-1259, 2003 WL 22533650, at *3 (E.D. La. Nov. 6, 2003) (Engelhardt, J.) (discussing *Diak*).  Some U.S. district courts have done the same.  *See, e.g.*, *Mathews*, 2009 WL 3837249, at *6.
[32] R. Doc. No. 47, ¶ 36.

exhaustion of administrative remedies."[33]  *Milofsky*, 442 F.3d at 313.  Accordingly, the Court will not dismiss the named plaintiffs' ERISA claims for failure to exhaust administrative remedies.

### D.

Further, Ochsner argues that all of the named plaintiffs' state law class action allegations should be stricken from the complaint.  (Ochsner's motion does not challenge the named plaintiffs' ERISA class action allegations.)

The Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons."  Fed. R. Civ. P. 23(d)(1)(D).  "[C]ourts have routinely applied Rule 23(d)(1)(D), or its predecessor Rule 23(d)(4), to motions to strike class allegations."  *Markey v. La. Citizens Fair Plan*, No. 06-5473, 2008 WL 5427708, at *1 (E.D. La. Dec. 30, 2008) (Vance, J.); *see also id.* (citing cases).  Pursuant to this rule, the Court may strike class allegations from the complaint "[w]here it is facially apparent from the pleadings that there is no ascertainable class."  *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (dismissing class allegations under Rule 12(b)(6)); *see also Markey*, 2008 WL 5427708, at *2 (citing *John* as an example of a court striking class allegations); *cf. Aguilar v. Allstate Fire and Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007) (Feldman, J.) ("A court may strike class allegations . . . where a complaint fails to

---

[33] It goes without saying that fiduciary duty and recordkeeping claims can affect the benefits to which one is entitled under an ERISA-regulated plan.  However, the claims are not themselves seeking the payout of benefits under the terms of the plan—and that matters for purposes of exhaustion.

plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate.").

Under Rule 23, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" if certain conditions are met. *See* Fed. R. Civ. P. 23(a). Moreover, a party seeking class certification under Rule 23(b)(3)—as the named plaintiffs do in this case—must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The named plaintiffs seek to assert numerous state law theories of liability against Ochsner as Rule 23 class actions,[34] including claims for breach of contract;[35] unjust enrichment and/or quantum meruit;[36] conversion and misappropriation;[37]

---

[34] R. Doc. No. 47, ¶¶ 88, 97-99.

[35] "The essential elements of a breach of contract claim [under Louisiana law] are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. Ct. App. 4th Cir. 2011).

[36] An unjust enrichment claim under Louisiana law consists of five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff." *Dugas v. Thompson*, 71 So. 3d 1059, 1067-68 (La. Ct. App. 4th Cir. 2011); *see also* La. Civ. C. art. 2298 (codifying the theory of unjust enrichment); *Ricky's Diesel Serv., Inc. v. Pinell*, 906 So. 2d 536, 539 (La. Ct. App. 1st Cir. 2005) (referring to the cause of action recognized under La. Civ. C. art. 2298 as quantum meruit). An "unjust enrichment claim cannot succeed" unless a plaintiff establishes the "absence of another remedy at law available to him." *Dugas*, 71 So. 3d at 1068.

[37] "The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Aymond v.*

detrimental reliance;[38] and violation of the LWPA.[39]  They seek to do so through three Rule 23(b)(3) classes of Ochsner employees: the Meal Break and GAP Class ("Meal Break Class"), the LWPA Class, and the CRNA Stipend Class.[40]

Ochsner contends that the named plaintiffs' class allegations cannot satisfy Rule 23(b)(3)'s predominance requirement, as adjudication of their state law claims will require an individual assessment of liability and individualized calculation of damages as to each individual member of each of the three proposed classes.[41] However, the Court concludes that striking the named plaintiffs' state law class action allegations from the complaint is not appropriate at this stage in the litigation.

Where "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such

---

*State of Louisiana, Dep't of Revenue and Taxation*, 672 So. 2d 273, 275 (La. Ct. App. 1st Cir. 1996) (internal citations omitted).  The Court understands the named plaintiffs' alternative claim for "money had and received" as equivalent to a claim for conversion.  *See La. Farm Bureau Mutual Ins. Co. v. Thompson* 719 So.2d 427, 431 (La. 1998); *see also Kramer v. Freeman*, 3 So. 2d 609, 612 (La. 1941).

[38] "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consolidated Gov't*, 907 So. 2d 37, 59 (La. 2005); *see also* La. Civ. C. art. 1967 (codifying the theory of detrimental reliance).

[39] As previously stated, an LWPA unpaid wages claim requires an employee to allege "i) that [the defendant] was her employer, ii) that the employee/employer relationship ceased to exist, iii) that at the time that the employee/employer relationship ended she was owed wages, and iv) that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days."  *Dillon*, 2017 WL 2351490, at *2.

[40] R. Doc. No. 47, ¶¶ 90-93, 105-08.  The named plaintiffs also seek to assert ERISA claims through a 401(k) Class.

[41] *See* R. Doc. No. 49-1,a t 12-18.

as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  The named plaintiffs have proposed at least one common question of fact that *may* predominate the resolution of the CRNA Stipend Class[42] claims: whether a binding agreement in the nature of a contract existed between the CRNA Stipend Class members and Ochsner that obligated Ochsner to pay stipends to class members based on the number of certain procedures performed by each class member.[43]   Moreover, the named plaintiffs have proposed at least one common question of fact that *may* predominate the resolution of the Meal Break[44] and the LWPA[45] Class claims: "whether Ochsner failed or refused to pay its non-exempt hourly Direct Patient Care Employees for worked performed for the benefit of Ochsner during said employees' meal breaks."[46] (The allegation that Ochsner did not pay former employees wages owed from work performed during meal breaks can support liability under the LWPA.  *See Dillon*, 2017 WL 2351490, at *2.).

---

[42] The named plaintiffs define the CRNA Stipend Class to include "[a]ll current and former hourly-paid, CRNA Direct Patient Care Employees at any and all facilities operated by [Ochsner], in the State of Louisiana, who were employed at any time within three (3) years of the filing of the First Amended Complaint."  *Id.* ¶ 93.

[43] *See id.* ¶ 102(c).

[44] The named plaintiffs define the Meal Break Class as "[a]ll current and former hourly-paid, non-exempt Direct Patient Care Employees at any and all facilities operated by [Ochsner], in the State of Louisiana, who were employed at any time within three (3) years of the filing of the First Amended Complaint."  *Id.* ¶ 90.

[45] The named plaintiffs define the LWPA Class as "[a]ll former hourly-paid, non-exempt Direct Patient Care Employees at any and all facilities operated by [Ochsner], in the State of Louisiana, who were employed at any time within three (3) years of the filing of the First Amended Complaint and have not been paid all wages since their separation of employment from Ochsner."  *Id.* ¶ 92.

[46] *Id.* ¶ 102(e).

While the Court has concerns about whether the named plaintiffs will ultimately be able to meet their burden under Rule 23(b)(3) at the class certification stage, the Court is not prepared to say that it is "facially apparent from the pleadings" that no classes are ascertainable. *John*, 501 F.3d at 445.

### E.

Finally, the introduction of Ochsner's memorandum in support of its motion alludes to a putative double recovery problem—namely, that some of the named plaintiffs' claims seek recovery for the same unpaid wages.[47]  Ochsner suggests that the possibility of double recovery in the future justifies the dismissal of some of the claims now.[48]  However, the Court under Rule 12(b)(6) looks to whether the plaintiff has stated a claim upon which relief can be granted, not whether those claims may lead to double recovery at the end of the litigation.  Moreover, pleading alternative theories of recovery is explicitly contemplated and permitted by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 18(a).  A potential double recovery problem down the road is simply not an appropriate ground on which to dismiss claims under Rule 12(b)(6).  *See, e.g.*, *Pickney v. Mid-State Marketing, LLC*, 318 F.R.D. 330, 331 (W.D. La. 2016).

### IV.

Accordingly,

---

[47] R. Doc. No. 49-1, at 2-3.

[48] *See id.*; *see also* R. Doc. No. 69-1, at 2-3 (arguing that a "duplicative and unnecessary cause of action should be dismissed," *id.* at 3).

**IT IS ORDERED** that the named plaintiffs' claims for penalty wages and attorney's fees under the LWPA are **DISMISSED**.

In all other respects, the motion is **DENIED**.

New Orleans, Louisiana, August 23, 2017.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**